962 P.2d 829 (1998)
Tecle GHEBREMICHALE, Deceased. Elsa Ghebreghiorghis, Widow, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES, Appellant.
No. 39209-3-I.
Court of Appeals of Washington, Division 1.
July 13, 1998.
Publication Ordered August 28, 1998.
*830 M. Catherine Walsh, Attorney General's Ofc, Labor & Industry Div., Olympia, for Appellant.
Joseph Albert Albo, Thomas G. Hall & Associates, Seattle, for Respondent.

OPINION
KENNEDY, Chief Judge.
The Department of Labor and Industries appeals the superior court's judgment awarding Elsa Ghebreghiorghis industrial insurance benefits as the surviving spouse of Tecle Ghebremichale. The Department contends that the superior court lacked jurisdiction to vacate the decree dissolving Ghebreghiorghis and Ghebremichale's marriage after Ghebremichale's death.
Because Ghebremichale died before Ghebreghiorghis moved to vacate the dissolution decree, the superior court lacked jurisdiction to vacate the decree. But even if the superior *831 court had jurisdiction to vacate the decree, Ghebreghiorghis is estopped from now challenging the validity of the decree because she invoked the superior court's jurisdiction and obtained the affirmative relief that she sought therefrom. Moreover, even disregarding the jurisdictional and procedural defects underlying Ghebreghiorghis' motion to vacate, the superior court lacked authority to vacate the decree under CR 60(b). Accordingly, we reverse the superior court and reinstate the Board of Industrial Appeals' decision denying Ghebreghiorghis industrial insurance benefits.
FACTS
Elsa Ghebreghiorghis and Tecle Ghebremichale married in Ethiopia in 1971. In 1981, they and their three children emigrated to Dallas, Texas. In 1987, Ghebreghiorghis and the children moved to Seattle, without Ghebremichale.
Shortly thereafter, in October 1987, with the assistance of her nonattorney cousin, Ghebreghiorghis filed a summons and petition for dissolution of marriage in King County Superior Court. In the petition, Ghebreghiorghis reported that she and her husband had recently separated. The petition was apparently signed by both Ghebreghiorghis and Ghebremichale, but Ghebremichale's signature was not notarized. Ghebremichale did not sign a joinder, an acceptance of service, a waiver of notice, or the summons in fact, neither party signed the summons.
In January 1988, more than 90 days after the petition was filed, Ghebreghiorghis and her cousin appeared before a King County Superior Court commissioner. The commissioner entered a decree of dissolution. Neither an affidavit of service nor an order of default appear in the superior court record.
After Ghebreghiorghis obtained the dissolution decree, Ghebremichale moved to Seattle. Ghebreghiorghis and Ghebremichale then had a fourth child together. In May 1992, while working at the High Point Grocery in Seattle, Ghebremichale was shot and killed.
In May 1993, Ghebreghiorghis, with the assistance of counsel, moved in King County Superior Court to have the decree of dissolution declared void ab initio. The superior court granted the motion, declaring the decree of dissolution to have been void from its inception. Ghebreghiorghis then filed a claim for industrial insurance benefits with the Department of Labor and Industries, as Ghebremichale's surviving spouse.
The Department denied Ghebreghiorghis' claim on the ground that she was not a "beneficiary" at the time of Ghebremichale's death. Ghebreghiorghis appealed to the Board of Industrial Insurance Appeals. After a hearing at which Ghebreghiorghis testified that the dissolution decree was a sham to avoid financial liability for their son's criminal activities and that she and Ghebremichale were not divorced in the eyes of their religion, an industrial appeals judge (IAJ) concluded that the dissolution decree was void ab initio. The IAJ issued a proposed decision and order reversing the Department's determination and awarding Ghebreghiorghis benefits. But the Board rejected the IAJ's proposed decision and order, concluding that the superior court lacked jurisdiction to declare the decree void ab initio after Ghebremichale's death. Accordingly, the Board affirmed the Department's decision to deny Ghebreghiorghis industrial insurance benefits.
Ghebreghiorghis appealed to King County Superior Court. The superior court concluded that its court commissioner lacked jurisdiction to enter the original dissolution decree, rendering the decree void. The court also concluded that it had jurisdiction to vacate the void dissolution decree. Therefore, the court reversed the Board and ordered the Department to pay Ghebreghiorghis industrial insurance surviving spouse benefits. The Department appeals.
DISCUSSION
The Department contends that the superior court lacked jurisdiction to vacate the dissolution decree after Ghebremichale's death, and thus erred by reversing the Board and awarding Ghebreghiorghis industrial insurance benefits. Alternatively, the Department contends that because Ghebreghiorghis petitioned the superior court to enter the dissolution decree, she is estopped from challenging *832 its validity. Ghebreghiorghis, on the other hand, contends that the superior court had a duty to vacate the decree under CR 60(b).

I. Dwyer v. Nolan

In the seminal case of Dwyer v. Nolan, 40 Wash. 459, 460, 82 P. 746 (1905), the wife sought to have a dissolution decree obtained by her late husband declared void because the court that entered the decree lacked personal jurisdiction over her. The Supreme Court noted that the husband's death eliminated the controversy's subject matter, i.e., the husband and wife's marital status. Id. at 460-61, 82 P. 746. Therefore, the court held that the superior court lacked jurisdiction to vacate the decree after the husband's death. Id. at 463, 82 P. 746.
The record supports Ghebreghiorghis' contention that the superior court did not have personal jurisdiction over Ghebremichale. That is, he did not have minimum contacts with Washington and, at least arguably, did not consent to the superior court's jurisdiction by signing the petition without also signing a joinder, acceptance of service, or waiver of notice and by failing to have his signature notarized. See In re Marriage of Markowski, 50 Wash.App. 633, 637 n. 2, 749 P.2d 754 (1988). But Ghebremichale died before Ghebreghiorghis filed her motion to vacate the dissolution decree. Therefore, the superior court lacked jurisdiction to vacate the decree under CR 60(b). Barros v. Barros, 26 Wash.App. 363, 365, 613 P.2d 547 (1980) (citing Dwyer, 40 Wash. 459, 82 P. 746).
The Supreme Court, however, has noted that if presented with a case demonstrating an obvious injustice, it may be required to revisit the harsh and restrictive rule set forth in Dwyer. Osborne v. Osborne, 60 Wash.2d 163, 166, 372 P.2d 538 (1962). The court recently granted review of an unpublished Division I case that relied upon Dwyer v. Nolan and its progeny. See In re Marriage of Himes, No. 37081-2-I, 1997 WL 222791 (Wash.App. May 5, 1997) (unpublished), review granted, 133 Wash.2d 1027, 950 P.2d 478 (1997). But even if the Supreme Court overrules Dwyer, the superior court nevertheless erred by vacating the dissolution decree in this particular case, because Ghebreghiorghis is estopped from questioning the validity of the decree of dissolution of marriage.

II. Estoppel
"[E]ven though a decree is void, a party who procures such a decree or consents to it is estopped to question its validity where [the party] has obtained a benefit therefrom, or has concurrently invoked the court's jurisdiction in order to gain affirmative relief." Markowski, 50 Wash.App. at 638, 749 P.2d 754. "Parties are barred from such conduct, not because the judgment obtained is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated." Svatonsky v. Svatonsky, 63 Wash.2d 902, 905, 389 P.2d 663 (1964) (citation omitted).
In this case, Ghebreghiorghis invoked the superior court's jurisdiction when she petitioned the court for a dissolution decree. Moreover, she obtained the affirmative relief that she sought, i.e., the superior court granted her petition for dissolution. Therefore, she is estopped from now challenging the validity of the dissolution decree.

III. CR 60(b)
Disregarding the jurisdictional and procedural defects underlying her motion to vacate the dissolution decree, Ghebreghiorghis maintains that the superior court had a duty to vacate the decree under CR 60(b). CR 60(b)(5) mandates that the court, upon motion of a party, irrespective of the lapse time, vacate its void judgments. In re Marriage of Powell, 84 Wash.App. 432, 438, 927 P.2d 1154 (1996); In re Marriage of Leslie, 112 Wash.2d 612, 618-19, 772 P.2d 1013 (1989). Ghebreghiorghis contends that the dissolution decree is void because Ghebremichale did not consent to the decree; the decree did not award custody of the children, set a visitation schedule, or award child support; and neither she nor Ghebremichale intended to divorce.
"When a trial court lacks in personam jurisdiction over a party, any judgment entered *833 by the court against that party is void." Scott v. Goldman, 82 Wash.App. 1, 6, 917 P.2d 131, review denied, 130 Wash.2d 1004, 925 P.2d 989 (1996). But where, as here, the petitioner resides in the state and the judgment only dissolves the legal status of the marriage, the superior court has in rem jurisdiction to enter a dissolution decree:
In rem proceedings may involve legal status such as the status of a marriage. In marriage dissolution cases, jurisdiction is based on either spouse's good faith domicile. If the court has personal jurisdiction over the defendant, there is jurisdiction to award support money. To the extent of property, the court also has jurisdiction to award support money when it has rem-type jurisdiction over the defendant's property.
1 Kelly Kunsch, Wash Prac. sec. 2.9, at 42 (1997); accord In re Marriage of Johnston, 33 Wash.App. 178, 179, 653 P.2d 1329 (1982). Therefore, although Ghebremichale apparently did not consent to the dissolution decree, the superior court had subject matter jurisdiction to dissolve Ghebreghiorghis and Ghebremichale's marriage.
Ghebreghiorghis also maintains that the dissolution decree is void because it failed to award custody of the children, set a visitation schedule, or set a child support schedule:
In entering a decree of dissolution of marriage, legal separation, or declaration of invalidity, the court shall [, inter alia,] determine the marital status of the parties, make provision for a parenting plan for any minor child of the marriage, make provision for the support of any child of the marriage entitled to support, consider or approve provision for the maintenance of either spouse, [and] make provision for the disposition of property and liabilities of the parties[.]
RCW 26.09.050. But a "judgment is void only if the court lacks jurisdiction." Little v. Little, 96 Wash.2d 183, 195, 634 P.2d 498 (1981). "Failure to settle ancillary matters at the time of the decree of dissolution is rendered does not deprive the court of jurisdiction over the parties, or the subject matter, or of the power to render a decree of dissolution." Id. at 197, 634 P.2d 498. Therefore, the superior court's failure to award custody of the children, set a visitation schedule, or set a child support schedule does not render the decree void. In fact, in this case, the superior court's failure to award custody of the children, set a visitation schedule, or set a child support schedule does not even render the decree voidable.
The Dissolution Act, RCW 26.09, implicitly authorizes a court to dissolve the legal status of a marriage while deferring those issues over which the superior court does not have jurisdiction. Little, 96 Wash.2d at 192-93, 634 P.2d 498 (citing Luvern V. Rieke, 49 Wash. L.Rev. 375, 401-03 (1974)). The Uniform Child Custody Jurisdiction Act governs whether the superior court has subject matter jurisdiction to award custody and set a visitation schedule without personal jurisdiction over an absent parent. RCW 26.27.030. But where the record evinces no attempt to notify the absent parent of a pending custody determination, the superior court does not have jurisdiction to make child custody determinations. Hudson v. Hudson, 35 Wash.App. 822, 833, 670 P.2d 287 (1983); RCW 26.27.050. In addition, to the extent that Ghebremichale's apparent attempt to join in the petition for dissolution was ineffective, the superior court lacked personal jurisdiction over Ghebremichale, and could not award Ghebreghiorghis child support. Johnston, 33 Wash.App. at 179, 653 P.2d 1329. Therefore, the superior court did not err by dissolving the legal status of the marriage without awarding custody of the children, setting a visitation schedule, or setting a child support schedule.
Finally, Ghebreghiorghis contends that the dissolution decree was void ab initio because she and Ghebremichale never intended to divorce. To the extent Ghebreghiorghis claims that the divorce was a result of legal error by the superior court, CR 60 does not apply. In re Marriage of Tang, 57 Wash.App. 648, 654, 789 P.2d 118 (1990) ("Errors of law may not be corrected by a motion pursuant to CR 60(b), but must be raised on appeal."). To the extent Ghebreghiorghis claims that she sought the dissolution decree by mistake, CR 60(b)(1) applies. Motions to vacate under CR 60(b)(1) must be *834 made within 1 year of the entry of a judgment. CR 60(b). Ghebreghiorghis, however, moved to vacate the dissolution decree after a year had lapsed. Therefore, the superior court had no authority to vacate the dissolution decree under CR 60(b).
In sum, the superior court lacked jurisdiction to vacate the dissolution decree after Ghebremichale's death. But even if the superior court had jurisdiction to vacate the decree, Ghebreghiorghis is estopped from challenging the validity of the decree. Moreover, even disregarding the jurisdictional and procedural defects underlying Ghebreghiorghis' motion to vacate, the superior court lacked authority to vacate the decree under CR 60(b). Accordingly, we reverse the superior court and reinstate the Board of Industrial Appeals' decision denying Ghebreghiorghis industrial insurance benefits.
COLEMAN and COX, JJ., concur.